**Dated: April 30, 2007**
**The following is ORDERED:**



Tom R. Cornish
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

IN RE:

**IONA KAY MASTERSON and**           Case No. 05-73949
**PAUL NATHAN LINNEY, JR.**           Chapter 7

             Debtors,

**PAUL NATHAN LINNEY, JR.**

             Plaintiff,

vs.           Adv. No. 06-8154

**OKLAHOMA STATE REGENTS**
**FOR HIGHER EDUCATION**

             Defendant.

**O R D E R**

On the 2nd day of April, 2007, the above-referenced adversary proceeding came on for trial. Appearances were entered by James Conrady, Attorney for Plaintiff, and David Harting, Attorney for Defendant. After hearing and reviewing the evidence and testimony presented by the parties, this Court does hereby enter its findings and conclusions in conformity with Rule 7052, Fed. R.

Bankr. P., in this core proceeding.

Debtors filed for bankruptcy relief under Chapter 7 of the Bankruptcy Code on September 14, 2005. Plaintiff commenced this adversary proceeding to determine the dischargeability of his student loan debt pursuant to 11 U.S.C. § 523(a)(8). The original defendants in this adversary proceeding were Sallie Mae and Sallie Mae Servicing, L.P.; OSRHE was substituted as the Defendant in an Order entered on November 16, 2006.

Mr. Linney also commenced an adversary proceeding to determine the dischargeability of student loan debt owed to the United States Department of Education ("DOE"). *See Linney v. U.S. Dep't of Educ.,* Adv. No. 06-8155 (Bankr. E.D. Okla.). Ms. Masterson also filed two adversary proceedings to determine the dischargeability of her student loans. *See Masterson v. Okla. State Regents for Higher Educ.,* Adv. No. 06-8152 (Bankr. E.D. Okla); *Masterson v. Okla. State Regents for Higher Educ.,* Adv. No. 06-8153 (Bankr. E.D. Okla). The four adversaries were consolidated for purposes of trial, and a joint Pre-Trial Order was entered April 2, 2007, in adversary proceeding 06-8152.

Debtors reside in Tahlequah, Oklahoma. Debtors both have two children from previous relationships, and have one child together. The children range in age from 2 years to eleven, and Debtors have full custody of all five children. Plaintiff receives $231.90 per month in child support. Ms. Masterson receives no child support payments, and is not pursuing child support. Plaintiff is 31 years old and is in good health.

Plaintiff is employed by Cingular Wireless, now owned by AT&T, in Catoosa, Oklahoma, as a customer service representative. Plaintiff's daily commute is just over 120 miles. His net pay is $797.57 every two weeks. Part of Plaintiff's income is deposited into a 401K retirement account.

2

Debtors also have health insurance coverage through Plaintiff's employment. Plaintiff anticipates an increase in pay, but he expects to reach the maximum pay level of $13.50 per hour within one to two years. Debtors also receive $362 each month under the Food Stamp Program.

Debtors own a home through the Cherokee Nation Housing Authority. Their monthly mortgage payment is $198. Debtors' estimated monthly expenses include $180 for electricity and heating, $35 for water, $131 for telephone, cell phone and internet, $90 for cable television, $16 for trash, $200 for food (in addition to the Food Stamp Program), $90 for home maintenance, $75 for laundry and dry cleaning, $50 for medical expenses, $360 for transportation expenses, $150 for recreation/entertainment expenses, $35 for house insurance, $74 for automobile insurance, $120 for automobile maintenance, $167 car payment and $140 for diapers. The list of income and expenses shows a shortfall each month of $333.96.

Both Debtors testified at trial as to the health of their youngest child. The child suffers from acute ear infections and a heart condition. Ms. Masterson stated that they are currently monitoring the child's condition, and there is hope that it will "heal itself".

As of April 4, 2007, the unpaid balance of Plaintiff's student loan debt owed to Defendant was $4,018.24. The unpaid balance of Plaintiff's student loan debt owed to the DOE was $27,754.67 as of April 3, 2007. Plaintiff attended Spartan Aeronautics in Tulsa, Oklahoma for a short time, and then attended Northeastern State University ("NSU") in Tahlequah, Oklahoma for a short time as well. Plaintiff does not have a college degree and does not anticipate returning to school.

The loan held by Defendant has either been in deferment or forbearance from the date of disbursement until the filing of the bankruptcy. Plaintiff has not made any voluntary payments on

3

Case 06-08154   Doc 35   Filed 05/01/07   Entered 05/09/07 09:21:27   Desc Main
Document      Page 3 of 7

his school loan debt; however, his wages were garnished on February 8, 2005, and February 23, 2005, to pay on the debt held by the DOE. On March 9, 2005, Plaintiff consolidated the loans with the DOE to avoid further garnishments.

Ms. Masterson does not work outside the home, and is currently a part-time student at NSU. She will graduate with a Bachelors Degree in December, 2007. Ms. Masterson testified at trial that she has no current plans of retaining outside employment following her graduation, due to childcare costs. Ms. Masterson also noted that she has excessively missed work in the past due to the youngest child's health.

Plaintiff's loan with the DOE has been consolidated, and his current monthly payment on that debt is zero. If Plaintiff consolidated all his student loan debt under the William D. Ford Direct Loan Program ("Ford Program") his monthly payments would be zero or close to zero under the income contingent repayment plan. Under the Ford Program, Plaintiff would also become eligible for the full range of deferments and forbearance in repayment that can extend up to three years.

Debtors scheduled no priority unsecured claims and no secured claims. The scheduled unsecured non-priority claims total $120,017.06 and consist of primarily credit card debt, medical bills and student loan debt.

Section 523(a)(8) excepts from discharge any debt "for an educational ... loan made, insured, or guaranteed by a governmental unit ... unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8). "In enacting § 523(a)(8), Congress was primarily concerned about abusive student debtors and protecting the solvency of student loan programs." *Educ. Credit Mgmt. Corp. v. Polleys (In re Polleys),* 356 F.3d 1302, 1306 (10th Cir. 2004).

4

"Undue hardship" is not defined in the Bankruptcy Code. In *Polleys*, the Court of Appeals for the Tenth Circuit adopted a three-part test established by the Second Circuit in *Brunner v. New York State Higher Educ. Servs. Corp.,* 831 F.2d 395 (2d Cir. 1987) for determining undue hardship. *Polleys,* 356 F.2d at 1309. *See also, Alderete v. Educ. Credit Mgmt. Corp. (In re Alderete),* 412 F.2d 1200, 1204 (10th Cir. 2005). The *Brunner* test requires the debtor to prove by a preponderance of the evidence:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans;
>
> (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and
>
> (3) that the debtor has made good faith efforts to repay the loans.

*Brunner,* 831 F.2d at 396, *quoted in Polleys,* 356 F.3d at 1307. If the debtor fails to prove any one of the three parts of this test, the student loan debt is nondischargeable under § 523(a)(8). *Polleys,* 356 F.3d at 1307.

The Tenth Circuit Court of Appeals noted, however, that an "overly restrictive interpretation of the *Brunner* test fails to further the Bankruptcy Code's goal of providing a 'fresh start' for the honest but unfortunate debtor..." *Id.* at 1308. The Circuit Court, therefore, went on to state that in order to advance this "fresh start" policy, and to give judges discretion to weigh all the relevant factors, "the terms of the test must be applied such that debtors who truly cannot afford to repay their loans may have their loans discharged." *Id.* at 1309.

Under the first prong of the *Brunner* test, factors that should be examined include the debtor's income, expenses, health of the debtor and any dependents and the debtor's education and skill level. *Id.* The second prong requires a bankruptcy court to analyze the facts and circumstances

5

affecting the debtor's future financial picture and the third prong includes an examination of whether the debtor has made a good faith effort to repay the student loans by maximizing income and minimizing expenses. *Id.* "Additionally ... the good faith portion of the *Brunner* test should consider whether the debtor is acting in good faith in seeking the discharge, or whether he is intentionally creating his hardship." *Id.*

In examining the factors relevant to the first prong, this Court cannot find that the Plaintiff is unable to maintain a minimal standard of living for himself and his dependants if forced to repay the loans. The Debtors are young and in good health. Their youngest child has an unspecified heart condition, however there is no evidence that the Debtors are currently incurring substantial expenses related to the condition, or that they will incur expenses in the near future. Furthermore, the family is covered under Plaintiff's health insurance benefits through Cingular Wireless.

If Debtors were required to repay the student loans, including Ms. Masterson's student loans, the monthly payment would be zero or near zero. Such a low payment (or no payment) would not cause the family to live below a minimal standard of living.

The second part of the *Brunner* test requires the debtor to show that additional circumstances exist that indicate the state of affairs is likely to persist for a significant portion of the repayment period. "[I]n applying this prong, courts need not require a 'certainty of hopelessness.' Instead, a realistic look must be made into the debtor's circumstances and the debtor's ability to provide for adequate shelter, nutrition, health care, and the like." *Polleys,* 356 F.3d at 1310. Courts should base their determination under this prong on "specific articulable facts, not unfounded optimism." *Id.*

The Debtors are providing adequate shelter, nutrition and health care to their family. Ms. Masterson will receive her degree in December, and despite her testimony regarding future income,

6

Case 06-08154    Doc 35    Filed 05/01/07    Entered 05/09/07 09:21:27    Desc Main
Document      Page 6 of 7

this Court believes that a Bachelors Degree will increase her future earning capacity. Plaintiff has no disabilities or chronic health conditions that affect his future earning capacity. The health of the youngest child is currently being monitored, and there is hope that it will "heal itself". There was no evidence at trial that the child's condition will be long-term. And while Plaintiff testified that his income will max out at Cingular Wireless, it is possible that he can find employment elsewhere with a higher earning potential. Plaintiff failed to show additional circumstances exist that indicate the present state of affairs is likely to persist.

The good faith requirement of the third prong can be satisfied by a showing that Plaintiff is "actively minimizing current household living expenses and maximizing personal and professional resources." Polleys, 356 F.3d at 1312.

In examining Plaintiff's expenses, it appears that the Plaintiff and his family are not living without basic necessities. The family resides in a home with cable television, internet access, and the 11-year-old child has a cellular telephone. Debtors also listed a monthly expense of $150 for recreation and entertainment expenses. It appears that the Debtors are not doing everything in their power to minimize expenses. Furthermore, Plaintiff has made no voluntary payments on his school loans.

For the forgoing reasons, this Court declines to discharge Plaintiff's student loan obligations to Defendant.

IT IS THEREFORE ORDERED that Plaintiff's student loan debt is **nondischargeable.**

###